JAMES J. HEGARTY and DEBORAH R. HEGARTY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hegarty v. Commissioner
Docket No. 21188-90
United States Tax Court
T.C. Memo 1992-143; 1992 Tax Ct. Memo LEXIS 194; 63 T.C.M. (CCH) 2335; T.C.M. (RIA) 92143; March 10, 1992, Filed *194 Decision will be entered under Rule 155. James J. Hegarty, pro se. J. Robert Cuatto, for respondent. PANUTHOS
PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3). [1]
In his notice of deficiency dated June 25, 1990, respondent determined a deficiency in petitioners' Federal income tax for 1987 in the amount of $ 4,244. [2] The only issue for decision is the proper method of computing income tax due on a distribution received by petitioners as a result of termination of an employee stock ownership plan. Petitioners argue that they are entitled to use the 5-year averaging method or, in the alternative, the 10-year averaging method. Respondent determined that the distribution was includable for the taxable year 1987. *195 FINDINGS OF FACT Some of the facts are stipulated and are so found. At the time of filing their petition herein, petitioners resided at Memphis, Tennessee. James J. Hegarty (petitioner) was employed by Republic Airlines (Republic) during 1983 and through August 1986. He was a member of the Air Line Employees Association union (union). Republic established an employee stock option plan (plan) for the benefit of its union employees. Respondent does not contest that the plan was qualified pursuant to the requirements of section 401(a). Petitioner was a member of the plan from September 1983 through August 1986. In August 1986, Northwest Airlines, Inc. (Northwest), acquired the stock of Republic and merged Republic with a subsidiary of Northwest. Although some Republic employees were laid off as a result of the merger, Northwest retained employees of Republic, including petitioner. Following negotiations with petitioner's union and in connection with the merger, Northwest determined it would terminate the plan. Petitioner received a statement of account which reflected that the cash balance as of February 28, 1987, had been credited to his "trust account at National Bank of *196 Detroit". Petitioner was unaware whether he could demand immediate payment of the account balance from the National Bank of Detroit. At some point prior to preparing for final distribution of the plan, Northwest received written approval from the Internal Revenue Service to terminate the plan. Disbursements from the plan were anticipated approximately 90 days from the February 28, 1987, plan year end date. In late April 1987, petitioner received a distribution check dated April 23, 1987. The check was mailed to petitioner at his home address. The amount of the distribution was $ 11,133.44. Petitioner received a Form 1099R reflecting this amount. Petitioner was not 50 years of age or older on January 1, 1986. Petitioner did not transfer the distributed amount into another eligible retirement plan within 60 days of receipt. On their return, petitioners claimed the 5-year averaging method under section 402(e) for computing the tax on the distribution. Respondent determined that petitioners were not entitled to use the averaging method. An explanation of items attached to the notice of deficiency indicated that petitioners' use of the 10-year averaging method was disallowed; *197 however, petitioners did not utilize that method in computing the tax shown on their return. At trial, petitioners contended that, if they are not eligible to use the 5-year method, they are entitled to use the 10-year method. Respondent argues that petitioners do not meet the statutory requirements for the 5-year method, and that they failed to elect the 10-year method within the period of time required by the statute.
OPINION At the outset, petitioners question the validity of the notice of deficiency issued to them. The notice of deficiency contained an error with respect to the explanation of the adjustments made in petitioners' income reporting, i.e., the explanation disallowed 10-year averaging where petitioners used 5-year averaging. A review of the record reflects that while the notice of deficiency erroneously described the adjustment, there is no question that petitioners were on notice of the nature of the contested item. Petitioners were not prejudiced nor misled by the error in description. ; . The notice of deficiency *198 issued to petitioners is valid. Amounts actually distributed from a qualified trust which is exempt from tax are taxable to the distributee in the year so distributed. Sec. 402(a)(1). However, any distribution which is transferred to an eligible retirement plan within 60 days of receipt is not includable in gross income. Sec. 402(a)(5). For taxable years ending on or before December 31, 1986, former section 402(e) provided 10-year forward averaging for computing the tax on lump sum distributions from qualified plans. A lump sum distribution is a distribution from a qualified plan payable: (i) on account of the employee's death; (ii) after the employee attains age 59-1/2; (iii) on account of the employee's separation from the service; or (iv) after the employee has become disabled.
Sec. 402(e)(4)(A). A taxpayer must elect 10-year lump sum treatment at the time and in the manner provided under regulations prescribed by the Secretary. Not more than one election is allowed with respect to any individual after such individual has attained age 59-1/2. Sec. 402(e)(4)(B). Subsection 402(e) was amended by section 1122 of the Tax Reform Act of 1986 to replace 10-year *199 forward averaging with 5-year forward averaging. [3] The 5-year forward averaging provisions generally are applicable to lump-sum distributions made after December 31, 1986. [4] The 5-year averaging provision applies to a distribution only if (i) the distribution is received on or after the employee has attained age 59-1/2, and (ii) the taxpayer elects for the taxable year to have all such amounts received during such taxable year so treated. Sec. 402(e)(4)(B). Congress also enacted a transitional rule. [5] Under the transitional rule, if an employee separates from service during 1986 and receives a lump sum distribution after December 31, 1986, and before March 16, 1987, on account of such separation from service, the employee may elect to treat the distribution as if it were received in 1986. *200 Petitioners are not entitled to use the 5-year averaging method. One of the eligibility requirements is that the employee (here, petitioner) has attained the age of 59-1/2 at the time of receipt. It is agreed that petitioner was less than 50 years old at the time of receipt; thus, he clearly does not qualify under these provisions. In the alternative, petitioners argue that they meet the requirements of the transitional rule and, therefore, are entitled to use the 10-year averaging method to determine the tax on the distribution received by them in April 1987. To support this position, petitioners argue that the funds were made available to them at least by February 28, 1987, the date of plan termination, and, thus, that they had constructive receipt of the distribution prior to March 16, 1987. Petitioners' constructive receipt argument must fail in light of specific statutory language concerning the taxation of beneficiaries of qualified plans. Section 402(a)(1) provides that only amounts actually distributed are subject to inclusion in income. Prior to 1982, however, the statute read differently. For taxable years beginning before December 31, 1981, section 401(a)(1) *201 provided, "the amount actually distributed or made available to any distributee * * * shall be taxable to him, in the year in which so distributed or made available under section 72." Congress amended section 402(a)(1) in the Economic Recovery Act of 1981 [6] to remove the phrase "or made available" each place it appeared in the section. [7]
It is undisputed that the cash balance of petitioner's employee stock option plan account was not actually distributed to him until April 1987. Under the transitional rule, the latest day on which a distribution may be received and still *202 be eligible for 10-year averaging is March 16, 1987. Since the statute no longer provides that distributions are taxable when "made available", petitioner cannot resort to constructive receipt to circumvent the statute's plain meaning. Thus, we hold that petitioners did not receive the distribution prior to March 16, 1987, and, thus, they do not qualify to use 10-year averaging under the transitional rule. Since we find that petitioners do not meet the requirements of the transitional rule, we need not discuss respondent's additional arguments with respect to the availability of 10-year averaging to petitioners. To reflect the foregoing and concessions by respondent, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency, respondent also determined that petitioners are liable for the additional tax for premature withdrawals from a qualified retirement plan under sec. 72(t). Respondent conceded this issue prior to trial.↩
3. Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2466. ↩
4. Sec. 1122(h)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2470.↩
5. Sec. 1124(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2475.↩
6. Pub L. 97-34, 95 Stat. 286. ↩
7. Sec. 314(c) of the Economic Recovery Act of 1981 provides: (c) Taxability of distribution to employees -- (1) Contributions made available. -- Paragraph (1) of Section 402(a) (relating to taxability of exempt trust) is amended by striking out each place it appears "or made available". (2) Effective date. -- The amendment made by paragraph (1) shall apply to taxable years beginning after December 31, 1981.↩